FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2009 AUG 24 A 3: 36

CLERK_ C. Ashell

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | | |
|---|---|---|
| PETER G. ARCHIBALD, | ) | |
| | ) | |
| Petitioner, | ) | CIVIL ACTION NO.: CV208-089 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | (Case No.: CR205-29) |
| | ) | |
| Respondent. | ) | |

### MAGISTRATE JUDGE'S ORDER AND REPORT AND RECOMMENDATION

Defendant Peter G. Archibald ("Archibald"), filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. The Government ("Respondent") has filed a Response. For the reasons which follow, Archibald's Motion should be **DENIED**.

### STATEMENT OF THE CASE

Archibald was indicted on charges of concealment of assets in a bankruptcy proceeding in violation of 18 U.S.C. § 152(1) and making a false oath in a bankruptcy proceeding in violation of 18 U.S.C. § 152(2). Archibald was convicted of the charged offenses following a jury trial. Archibald was sentenced to 60 months' imprisonment. Archibald filed an appeal, and the Eleventh Circuit Court of Appeals affirmed his conviction.

In the instant Motion, Archibald generally asserts that his retained attorney, Vincent G. Sowerby ("Sowerby"), provided ineffective assistance of counsel at his trial and at his sentencing. (Doc. No. 1, pp. 4-10).

## DISCUSSION AND CITATION TO AUTHORITY

I.      **Sowerby did not provide ineffective assistance of counsel at trial.**

Archibald contends that the outcome of his criminal trial was prejudiced by many instances of Sowerby's ineffective assistance of counsel. Archibald further contends that there is a reasonable probability that the outcome of the trial would have been different without Sowerby's errors. Archibald asserts that he is entitled to a new trial on the basis of Sowerby's ineffective assistance. (Doc. No. 9, p. 9).

A claim that a defendant did not receive effective assistance of counsel involves the right to counsel which guarantees not only assistance, but effective assistance of counsel. Strickland, 466 U.S. 668, 686 (1984). The "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. To be successful on an ineffective assistance of counsel claim, the defendant must satisfy a two-part test: (1) his counsel's performance was deficient, falling "below an objective standard of reasonableness"; and (2) the deficient performance prejudiced his defense so badly that there is a reasonable probability that it impacted the result. Id. at 687-688; Quince v. Crosby, 360 F. 3d 1259, 1265 (11th Cir. 2004). When reviewing the level of performance provided by counsel, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689.

A.      **Sowerby's witness selection was not ineffective assistance of counsel.**

Archibald contends that Sowerby's failure to present witnesses capable of corroborating his testimony regarding his failing health and confusion while filling out the

bankruptcy petition amounted to ineffective assistance of counsel. (Doc. No. 9, pp. 12-16). Archibald further contends that Sowerby should have called an expert witness to testify. (Id. at 17-19).

The decision of which witnesses to call "is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F. 3d 1506, 1512 (11th Cir. 1995). "Whether to present certain testimonial evidence is a matter of trial strategy, and complaints of uncalled witnesses are generally disfavored." Sanders v. U.S., 314 Fed. Appx. 212, 213 (11th Cir. 2008). The test for ineffectiveness is not whether counsel could have done more, as perfection is not required. The test is whether some reasonable attorney could have acted, in the circumstances, as the present attorney acted. Waters, 46 F. 3d at 1518.

### i. Sowerby's failure to present corroborating witnesses regarding Archibald's alleged confusion and health issues was not ineffective assistance of counsel.

Archibald asserts that Sowerby relied entirely on his belief that his motion to dismiss the indictment for failure to allege a criminal offense would be granted. Archibald further asserts that Sowerby continued to pursue this defense even after the motion did not succeed. Archibald contends that Sowerby was not prepared to change his strategy and present evidence that tended to show that he mistakenly included the incorrect information on the bankruptcy petition. (Doc. No. 9, p. 12). Archibald asserts that, other than his own testimony, Sowerby failed to present any evidence establishing that he was confused about how to complete the bankruptcy petition because of his bankruptcy attorney's failure to meet with him or advise him on what answers the petition required. Archibald contends that he retained Robert Hademan Baer ("Baer") to

file a bankruptcy petition on behalf of him and his wife. Archibald further contends that Baer did not assist him in completing the bankruptcy petition, although he received assistance from Baer's legal assistant, Kimberly Lacey ("Lacey"). (Id. at 13). Archibald asserts that Baer did not review the bankruptcy petition prior to filing it. Archibald further asserts that he was not knowledgeable in the field of bankruptcy law and did not intend to make a false statement in the bankruptcy proceeding. Archibald contends that Sowerby failed to present any evidence showing that he lacked sophistication, lacked intent, and had not understood the bankruptcy questions and forms. Archibald further contends that his poor health impacted his memory and ability to understand things. Archibald asserts that Sowerby should have presented evidence corroborating his testimony, such as testimony by his son and cardiologist. (Id. at 14). Archibald further asserts that Sowerby's failure to present additional witnesses forced the jury to rely on his own testimony, which the government portrayed as extremely suspect. Archibald contends that his confused testimony was a result of Sowerby's failure to discuss his testimony with him prior to trial. Archibald further contends that he appeared to be a liar at trial because of Sowerby's failure to present a coherent direct examination and rehabilitate him on redirect. (Id. at 15). Archibald asserts that Sowerby's performance fell below the standard of a reasonably competent attorney. Archibald contends that if Sowerby had presented his testimony in a coherent fashion and supported it with other corroborating testimony, there is a reasonable probability that the jury verdict would have been different. (Id. at 16).

Respondent asserts that a tactical decision amounts to ineffective assistance of counsel only if it is so patently unreasonable that no competent attorney would have

chosen it. Respondent further asserts that the decision to call some witnesses and not others is the epitome of a strategic decision. (Doc. No. 10, p. 16). Respondent contends that Archibald cannot that show he was prejudiced by Sowerby's failure to call additional witnesses because Archibald testified about his failing health, extensive business experience, and filing previous bankruptcies. (Id. at 16-18). Respondent further contends that Archibald cannot claim Sowerby was ineffective for failing to defend on a basis that was before the jury via Archibald's own testimony. Respondent asserts that Archibald's testimony belies his current assertion that he made a mistake in filling out the bankruptcy forms and that his failing health prevented him from understanding what he was doing when he filled out the forms. (Id. at 18).

In Archibald's Reply, he contends that Sowerby needed to call other witnesses to corroborate his testimony because the government challenged and attempted to impeach nearly every aspect of his testimony at trial. (Doc. No. 13, p. 2). Archibald further contends that independent witnesses were needed at trial to counter the government's assertion that he was an astute businessman. (Id. at 2-3).

Archibald's contention that Sowerby's assistance was ineffective because he failed to call corroborating witnesses at trial is unavailing. Sowerby's decision not to call corroborating witnesses was a strategic decision and this Court will rarely second guess such decisions. See Waters, 46 F. 3d at 1512. Complaints of uncalled witnesses are also generally disfavored. Sanders, 314 Fed. Appx. at 213. Sowerby's performance may not have been optimal, but Archibald cannot show that it fell below an objective standard of reasonableness because while Sowerby might have done more, a

reasonable attorney could have acted as he did under the circumstances. See Strickland, 466 U.S. at 687-688; Waters, 46 F. 3d at 1518.

### ii. Sowerby's failure to call an expert witness was not ineffective assistance of counsel.

Archibald contends that Sowerby should have called an expert witness to testify about a bankruptcy attorney's duties and Baer's failure to fulfill those duties as his attorney. (Doc. No. 9, p. 17). Archibald further contends that the expert witness could have testified that a bankruptcy attorney has the duty to explain to the client what the questions on the bankruptcy forms mean; review the client's answer on the forms; and review and discuss the answers to determine the adequacy of the information provided. (Id. at 17-18). Archibald asserts that the expert witness could have also testified that the bankruptcy forms filed by Baer were inappropriate; the information Archibald supplied on the handwritten petition form showed he did not understand how to value Rooster's; a competent bankruptcy attorney would have observed the error and corrected the information; Baer should have known that he did not qualify for Chapter 13 relief; and Baer never should have filed the petition with the Bankruptcy Court. Archibald contends that the expert could have further testified about the significant variances between his handwritten petition draft and the final draft, which indicated that Lacey determined the figures on the final petition. (Id. at 18). Archibald further contends that such expert witness testimony would have bolstered his own testimony that he made an honest mistake when he listed Rooster's market value as $2,000. (Id. at 19).

Respondent asserts that Sowerby's decision not to call an expert witness was a strategic decision insulated from a collateral challenge. Respondent contends that Sowerby was prepared to call Baer as a witness. (Doc. No. 10, p. 21). Respondent

further contends that Baer testified that he sent the bankruptcy forms home with Archibald because he knew that he would understand them and Archibald never expressed that he did not understand anything on the forms in the several times they spoke. (Id. at 21-22). Respondent asserts that Sowerby's closing argument addressed the very points Archibald now claims would only have been before the jury if Sowerby had called an expert witness. (Id. at 22-23).

In Archibald's Reply, he contends that Respondent's assertion that an expert witness was not needed because Baer testified is without merit because Baer's testimony created the necessity to call an expert witness for impeachment purposes. (Doc. No. 13, p. 3). Archibald further contends that Lacey's testimony was inadequate. Archibald asserts that while Sowerby may have argued some of these matters in his closing argument, the arguments were not based on facts presented to the jury. (Id. at 4).

Sowerby's decision not to call an expert witness to testify about Baer's performance was not ineffective assistance of counsel because it was a strategic decision. Thus, the decision is one that this Court will seldom second guess. See Waters, 46 F. 3d at 1512. Sowerby's decision cannot be said to have fallen below an objective standard of reasonableness. See Strickland, 466 U.S. at 687-688. Archibald is unable to show that Sowerby's failure to call additional witnesses amounted to ineffective assistance of counsel.

**B.      Sowerby did not fail his duty to investigate.**

Archibald asserts that Sowerby failed to investigate when he did not adequately interview and cross-examine attorney Alan Begner ("Begner"). (Doc. No. 9, pp. 16-17).

Archibald contends that Sowerby further failed to investigate when he was unprepared to defend against the government's piercing the corporate veil argument. (Id. at 24-27).

"The Sixth Amendment guarantees a defendant the right to reasonably effective assistance of counsel." Mitchell v. Kemp, 762 F.2d 886, 888 (11th Cir. 1985) (citing Strickland, 466 U.S. at 685-86). Defense counsel's duty to investigate prior to trial is governed by a "reasonableness standard." Id. at 888-89; Strickland, 466 U.S. at 691. Defense counsel must perform a "reasonable" investigation, or make a "reasonable" decision that such an investigation is not warranted. Mitchell, 762 F.2d at 888; Strickland, 466 U.S. at 691. The Supreme Court further held that defense counsel's decision regarding the level of investigation warranted must be viewed with a strong presumption of reasonableness at the time the decision regarding investigation was made, not with the benefit of hindsight. Strickland, 466 U.S. at 689. "No absolute duty exists to investigate particular facts or a certain line of defense. Chandler v. U.S., 218 F. 3d 1305, 1317 (11th Cir. 2000). Strickland's approach toward investigation "reflects the reality that lawyers do not enjoy the benefit of endless time, energy, or financial resources." Chandler, 218 F. 3d at 1318 n. 22 (citing Rogers v. Zant, 13 F. 3d 384, 387 (11th Cir. 1994)).

### i. Sowerby did not ineffectively investigate and cross-examine Begner.

Archibald asserts that Sowerby failed to adequately interview and cross-examine Begner regarding discussions he had with Archibald concerning the valuation of Rooster's and other businesses. (Doc. No. 9, p. 16). Archibald further asserts that Sowerby would have learned that Begner and Archibald discussed how to value businesses if he had properly interviewed Begner. (Id. at 16-17). Archibald contends

that such testimony would have refuted the government's allegation that he falsely testified that Begner gave him advice about property values. Archibald asserts that the presumption of a sound trial strategy founders when it stems from ignorance. (Id. at 17).

Respondent contends that Begner's testimony was clear and demonstrated that Archibald made false statements to the Bankruptcy Court. Respondent further contends that Begner testified that he did not provide Archibald with advice on how to value Roosters, real estate, houses, or other property. (Doc. No. 10, p. 19). Respondent asserts that Archibald testified that Begner did not give him advice. (Id. at 19-20). Respondent contends that Archibald's assertion that a more effective cross-examination would have revealed that Begner advised him on how to value Rooster's is completely refuted by the record. (Id. at 20).

Archibald's assertion that Sowerby failed to properly investigate and cross-examine Begner is without merit. Sowerby interviewed Begner by telephone prior to trial. Sowerby's investigation was adequate given the strong presumption of reasonableness this Court gives a defense counsel's decisions regarding the warranted level of investigation. See Strickland, 466 U.S. at 689. Further, the record refutes Archibald's assertion that a more effective investigation and cross-examination of Begner would have revealed that he advised Archibald on how to value Rooster's. Begner testified at trial that he did not consult with Archibald about the value of Rooster's; did not talk with Archibald about bankruptcy; and did not know the value of Rooster's. (2:05-CR-29, Doc. No. 79, p. 165). Begner further testified that he did not advise Archibald on how to value real estate, houses, or other property. (Id. at 170). Archibald testified that, "I talked briefly with Alan [Begner], but it was never, never- and it

was testified that I said he gave me the advice, and that's not the truth." (2:05-CR-29, Doc. No. 80, p. 184). Archibald further testified that, "I never said to the agent that Mr. Begner told me what to do. I said I had asked him from time to time and I had talked to him about various things, but I never said exactly what he testified." (Id.). Thus, even if this Court were to find that Sowerby did not conduct a reasonable investigation, Archibald is unable to satisfy the second prong of Strickland by showing that he was prejudiced. 466 U.S. at 687-688. Accordingly, Archibald's assertions are without merit.

### ii. Sowerby did not fail to prepare a defense to the government's attempt to pierce Rooster's corporate veil.

Archibald contends that the government presented evidence at trial in an effort to pierce Rooster's corporate veil. (Doc. No.9, p. 24). Archibald further contends that Sowerby failed to prepare a defense to this evidence. Archibald notes that Sowerby stated in his closing argument that the indictment had not put him on notice of the government's theory of piercing the corporate veil and that he was not ready to litigate that issue. Archibald asserts that Sowerby should have known that the government would attempt to pierce the corporate veil and prepared a defense to that issue. Archibald further asserts that Sowerby had a duty to investigate Rooster's and present evidence establishing that Rooster's was a legitimate corporation. (Id. at 25). Archibald contends that Sowerby failed to make a reasonable investigation or to make a reasonable decision that a particular investigation was not necessary. (Id. at 26-27) (citing Strickland, 466 U.S. at 690-691).

Respondent asserts that despite Sowerby's remark that he was not ready to refute the government's corporate veil argument, the record demonstrates that he anticipated and was ready to address the issue. Respondent further asserts that

Sowerby made a Rule 29 motion on the basis that there was insufficient evidence to support the government's theory of piercing the corporate veil. Respondent contends that, in Sowerby's pretrial requests to charge, he requested that the Court give several jury instructions that would rebut the government's corporate veil theory. (Doc. No. 10, p. 35). Respondent further contends that Sowerby addressed the corporate veil issue at length in his closing argument. Respondent asserts that Archibald did not suffer any prejudice because he admits that the Court properly charged the jury on the piercing the corporate veil issue. (Id. at 36).

In Archibald's Reply, he contends that, while Sowerby addressed the corporate veil issue in his closing argument, he did not present any evidence at trial regarding the issue. Archibald further contends that Sowerby's failure to introduce evidence at trial addressing the corporate veil issue meant that there was no evidence supporting his arguments before the jury when they considered the issue. (Doc. No. 13, p. 10).

Archibald's contentions are without merit. Archibald essentially argues that Sowerby should have known that the government would attempt to pierce Rooster's corporate veil, he failed his duty to investigate that issue, and as a result the only evidence he presented at trial establishing that Rooster's was a viable corporation were its tax returns. However, the record before the Court indicates that Sowerby did, in fact, anticipate that the government would attempt to pierce Rooster's corporate veil. Sowerby submitted pretrial requests for jury charges that would rebut the government's corporate veil theory. (CR2:05-29, Doc. No. 49). In Archibald's Requests to Charge, Sowerby asked the Court to charge the jurors to consider whether the property described in the indictment properly belonged to Archibald's bankruptcy estate; that

they could not convict Archibald on Count 1 if they found that the property concealed did not belong to him; that the assets of Rooster's did not belong to the stockholders; and that Archibald was under no duty to disclose or value Rooster's assets because the assets of Rooster's did not belong him. (Id. at 2, 9, 16, 17). Sowerby would not have made such requests to charge if he did not anticipate the government's attempt to pierce Rooster's corporate veil. Sowerby also introduced Rooster's tax returns as Defense Exhibits 2, 3, 4, 5, 6, 7, and 8, which further go to show that he anticipated and prepared a defense to the government's attempt to pierce Rooster's corporate veil. Sowerby also asserted in his closing argument that Archibald had three defenses to the charges against him. The second of these defenses was that the government did not show any evidence that would pierce Rooster's corporate veil. (CR2:05-29, Doc. No. 81, pp. 17-18, 23). Sowerby further asserted that Rooster's tax returns showed that it was a viable corporation operating legitimately. (Id. at 23-24). Thus, while Sowerby remarked that he was not ready because he was not put on notice that the government would attempt to pierce Rooster's corporate veil (Id. at 27), the record as a whole demonstrates that he did anticipate this tactic and conducted a reasonable investigation into the issue prior to trial. See Strickland, 466 U.S. at 691. While Archibald argues that a better defense could have been presented with more evidence, the Court is mindful of "the reality that lawyers do not enjoy the benefit of endless time, energy, or financial resources." Chandler, 218 F. 3d at 1318 n. 22 (citing Rogers, 13 F. 3d at 387).

## C. Sowerby's actions regarding Agent Alig's notes were not ineffective assistance of counsel.

Archibald asserts that Sowerby failed to request FBI Special Agent Mark Alig's ("Agent Alig") notes for use during his cross-examination. Archibald requests that these

notes be turned over so that he may determine if and/or how he was prejudiced. (Doc. No. 9, p. 16).

Respondent contends that contrary to Archibald's assertion, Sowerby did request Agent Alig's notes. (Doc. No. 10, p. 23). Respondent further contends that Sowerby orally requested Agent Alig's notes and the trial Court overruled this request. Respondent asserts that Sowerby effectively cross-examined Agent Alig without the notes. (Id. at 24). Respondent further asserts that Archibald's bare assertion that he is prejudiced by Sowerby's failure to obtain the notes is not enough for him to obtain relief under § 2255. Respondent also opposes Archibald's request to disclose the notes, contending that he has not shown relevancy or need. (Id. at 25).

Archibald asserts in his Reply that the notes are relevant because Agent Alig testified about very damaging statements he allegedly made while being interviewed by the agent. (Doc. No. 13, pp. 4-5). Archibald further asserts that Agent Alig's notes are needed because Agent Alig misstated portions of what was said in the interview, the notes were contemporaneous writings about the interview, and the notes might impeach Agent Alig's testimony. Archibald contends that the government's refusal to provide him with Agent Alig's notes precludes him from making anything but bare assertions regarding the need for the notes. Archibald requests that the Court make an in camera review of the notes in order to determine their relevancy and importance. (Id. at 5).

The record reveals that Sowerby filed a discovery motion requesting "[a]ll rough notes of any government witnesses and all State and Federal law enforcement officers." (2:05-CR-29, Doc. No. 19, p. 19). The record further reveals that Sowerby orally requested Agent Alig's notes at the close of his direct testimony and the Court overruled

this request. (Id., Doc. No. 80, pp. 74-76). Thus, Archibald cannot show that Sowerby provided ineffective assistance of counsel for failing to do something that he did, in fact, do. See Strickland, 466 U.S. at 687-688.[1]

### D. Sowerby adequately cross-examined Baer and Agent Alig.

Archibald contends that Sowerby performed inadequate and ineffectual cross-examinations of Baer and Agent Alig. (Doc. No. 9, pp. 19-20). Archibald asserts that Sowerby failed to question Baer about his alleged failures as Archibald's bankruptcy attorney. Archibald further asserts that Sowerby's cross-examination of Agent Alig consisted mainly of questioning the agent about certain documents in order to lay a foundation for their admission. (Id. at 20). Archibald contends that these documents were highly prejudicial to the defense, offered nothing advantageous to the defense, and would have otherwise been inadmissible if Sowerby had not introduced them as evidence. (Id. at 20-21).

Respondent asserts that Sowerby's cross-examination of Baer was not deficient. (Doc. No. 10, p. 26). Respondent further asserts that Baer testified that he knew that Archibald would understand the bankruptcy forms because of his experience with bankruptcy proceedings and that Archibald never told him that he had any difficulties understanding the forms. (Id. at 26-27). Respondent contends that Archibald was not prejudiced by the introduction of the documents following Agent Alig's cross-examination because the inconsistent statements he made regarding the valuation of Rooster's were already before the jury through the testimony of Agent Alig, Begner, and Archibald himself. (Id. at 27-28).

---

[1] Archibald's request for the discovery or *in camera* review of Agent Alig's notes is **DENIED**.

In Archibald's Reply, he contends that Baer's testimony that Archibald understood the bankruptcy forms was exactly the type of testimony that Sowerby should have impeached through cross-examination by challenging how and why he believed Archibald would understand the forms when he never discussed them with Archibald. (Doc. No. 13, pp. 5-6). Archibald further contends that even if some of the evidence contained in the documents was already before the jury, it was still highly prejudicial for the defense itself to introduce the documents into evidence. Archibald asserts that instead of offering and endorsing the damaging evidence, Sowerby should have been vehemently contesting the matters set forth in the documents. (Id. at 6).

The decision to cross-examine a witness and the manner in which it is conducted are tactical decisions "well within the discretion of a defense attorney." Fugate v. Head, 261 F. 3d 1206, 1219 (11th Cir. 2001) (citing Messer v. Kemp, 760 F. 2d 1080, 1090 (11th Cir. 1985)). Absent a showing of "a single specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial," the petitioner is unable to show prejudice necessary to satisfy the second prong of Strickland. Fugate, 261 F. 3d at 1219. Ineffective assistance of counsel will not be found merely because other testimony might have been elicited from those who testified. Fugate, 261 F. 3d at 1220. Petitioner must make a specific, affirmative showing of any exculpatory evidence to satisfy the second prong of Strickland. Gonzalez v. McNeil, 2008 WL 731496 at *13 (S.D. Fla. 2008). Speculation about what witnesses could have said is not enough to establish prejudice. Id.

Archibald's contention that Sowerby's allegedly deficient cross-examination of Baer and Agent Alig was ineffective assistance of counsel is without merit. The manner

in which Sowerby cross-examined Baer and Agent Alig was a tactical decision and, as such, this Court will seldom second-guess it. See Fugate, 261 F. 3d at 1219. Sowerby's failure to question Baer regarding his alleged deficient representation of Archibald in the bankruptcy proceeding is not the type of "single specific instance where cross-examination could have affected the outcome" of Archibald's criminal trial sufficient to show the necessary prejudice. See Id.[2] Such a line of questioning may have proven useful to Archibald's defense, but it is not a specific, affirmative showing of exculpatory evidence sufficient to satisfy the second prong of Strickland. See Gonzalez, 2008 WL 731496 at *13. This Court will also not find ineffective assistance of counsel merely because other testimony may have been elicited from Baer. See Fugate, 261 F. 3d at 1220. Further, Archibald merely speculates that a more effective cross-examination of Baer would have been highly beneficial to the defense, and mere speculation is not enough to establish prejudice. See Gonzalez, 2008 WL 731496 at *13. Archibald is unable to show he suffered any prejudice as a result of the admission of the allegedly damaging documents following Agent Alig's cross-examination. While the decision to introduce the allegedly damaging documents as evidence may be questionable, any resulting prejudice Archibald may have suffered is negligible because the information contained in those documents was already before the jury through the testimony of Agent Alig, Begner, and Archibald. As such, Archibald is unable to satisfy the second prong of Strickland. 466 U.S. at 687-688.

---

[2] Compare Nixon v. Newsome, 888 F. 2d 112, 115-16 (11th Cir. 1989) (finding ineffective assistance of counsel where attorney failed to impeach the key prosecution witness with her prior inconsistent testimony where the earlier testimony was much more favorable to the defendant).

**E.** **Sowerby's possible conflict of interest did not result in ineffective assistance of counsel.**

Archibald contends that Sowerby failed to reveal a potential conflict of interest based on his simultaneous representation of prosecution witness Baer in an unrelated D.U.I. case. Archibald further contends that while Baer was his bankruptcy attorney, he failed to advise him about information that needed to be included in the bankruptcy petition; failed to review the bankruptcy petition before it was filed; failed to file the petition to be a pro rata petition; and filed a Chapter 13 bankruptcy petition that on its face established that Archibald was ineligible to file such a petition. Archibald asserts that Sowerby failed to cross-examine Baer on these important matters. (Doc. No. 9, p. 21). Archibald further asserts that Sowerby placed himself in a position conducive to divided loyalties when he agreed to represent Archibald while already representing Baer, a potentially adverse witness. Archibald contends that he was adversely affected by Sowerby's dual representation because it led to Sowerby's failure to perform a complete, competent, and appropriate cross-examination of Baer. (Id. at 22).

Respondent asserts that the possibility of a conflict is not sufficient for Archibald to obtain relief under § 2255. (Doc. No. 10, p. 29). Respondent notes that the conflict of interest issue arose prior to trial because of Sowerby's dual representation of Archibald and his co-defendant wife. The Court found that a conflict existed and Jerrell Ramsey was appointed to represent Barbara Archibald. The Court further found that no conflict existed to preclude Sowerby's continued representation of Archibald. Respondent contends that if Archibald was willing to waive Sowerby's conflict of interest arising from the simultaneous representation of his co-defendant, then it tends to show that he would

have been willing to waive the minor conflict of Sowerby representing Baer in a completely unrelated personal matter. (Id. at 29-30).

A habeas petitioner alleging ineffective assistance of counsel as a result of his attorney's conflict of interest must show that his trial attorney labored under an actual conflict of interest adversely affecting his lawyer's performance. Cuyler v. Sullivan, 446 U.S. 335, 350 (1984). Only when a defendant shows that his counsel actively represented conflicting interests does he establish an actual conflict under the Sixth Amendment. Id. A mere hypothetical conflict will not suffice to establish a violation under Cuyler. Quince v. Crosby, 360 F. 3d 1259, 1264 (11th Cir. 2004). An actual conflict of interest occurs when a lawyer has "inconsistent interests." Id. In order to prove that an actual conflict hindered petitioner's lawyer's performance, petitioner must make a factual showing of inconsistent interests or point to specific instances in the record to suggest an actual impairment of his interests. Id. (internal citations omitted). To prove adverse effect, a habeas petitioner must: (1) point to some plausible alternative defense strategy or tactic that might have been pursued; (2) demonstrate that the alternative strategy or tactic was reasonable under the facts;[3] and (3) show some link between the actual conflict and the decision to forgo the alternative strategy of defense.[4] Freund v. Butterworth, 165 F. 3d 839, 860 (11th Cir. 1999).

Sowerby did not provide ineffective assistance of counsel as a result of the possible conflict of interest created by his simultaneous representation of Archibald and

---

[3] Because prejudice is presumed, the petitioner need not show that the defense would necessarily have been successful if the alternative strategy had been used, rather, he need only prove that the alternative possesses sufficient substance to be a viable alternative. Freund, 165 F. 3d at 860 (internal citations omitted).

[4] In other words, petitioner must establish that the alternative defense was inherently in conflict or not undertaken due to the attorney's other loyalties or interests. Freund, 165 F. 3d at 860 (internal citations omitted).

Baer. The undersigned initially notes that Archibald's assertion that Sowerby failed to reveal the potential conflict of interest to him is not entirely consistent with his affidavit, in which he states that Sowerby informed him that he had been asked by Baer to represent him in an unrelated matter. (Doc. No. 13-2, p. 3). The record reveals that Sowerby simultaneously represented Archibald in the criminal trial at issue here and Baer in an unrelated D.U.I. case. Archibald fails to show that any conflict of interest adversely affected Sowerby's performance. Archibald contends that the plausible alternative defense strategy or tactic that Sowerby should have pursued was the proper, vigorous, and complete cross-examination of Baer. Archibald further contends that the alternative strategy was reasonable here because Baer was responsible for filing the damaging bankruptcy petition and Baer disavowed responsibility for that petition in his testimony. Archibald asserts that the link between the conflict and the decision to forgo the alternative strategy was Sowerby's continuing loyalty to Baer. (Doc. No. 13, p. 7). Even assuming, arguendo, that a vigorous cross-examination of Baer was a plausible alternative defense strategy that was reasonable in this case, Archibald fails to show a link between any conflict and the decision to forgo the alternative strategy of defense. While Sowerby represented Baer in an unrelated matter, Archibald makes no showing that Sowerby's loyalties to Baer as his attorney in that matter prevented him from vigorously cross-examining Baer. See Fruend, 165 F. 3d at 860 (internal citations omitted).

**F.    Sowerby performed an adequate direct examination of Lacey.**

Archibald asserts that Sowerby performed an inadequate and ineffectual direct examination of Lacey because he did not contest her testimony that all the information

on the bankruptcy petition came from Archibald. (Doc. No. 9, p. 22). Archibald further asserts that Sowerby needed to challenge this testimony in order to bring out the truth that Lacey was responsible for giving him advice on how to answer the questions and for making the final determination as to the information to be placed in the petition. (Id. at 22-23). Archibald contends that Sowerby's failure to challenge Lacey's testimony was highly detrimental because the jury was lead to believe that he knowingly and purposefully included the misleading and inaccurate figures in the petition, when Lacey was actually responsible. (Id. at 23).

Respondent asserts that Archibald testified that he valued the Rooster's stock at $2,000 based on what his accountant put as the par value for the stock for income tax purposes. (Doc. No. 10, p. 30). Respondent further asserts that Archibald also testified that the only conversation he had with Lacey about the value of Rooster's was when he advised her of the stock's value for inclusion on the bankruptcy petition. (Id. at 30-31). Respondent contends that Archibald's testimony is consistent with Lacey's testimony that Archibald gave her the stock valuation information and that she did not put anything in the bankruptcy petition not told to her by him. Respondent further contends that, given Archibald's testimony regarding how he valued the stock, it is difficult to understand how he can now assert that Sowerby was ineffective for failing to elicit directly contradictory testimony. (Id. at 31).

Archibald asserts in his Reply that the important point here is not that he indicated that he owned 1,000 shares of stock for which he originally paid $2 per share, but rather that he gave this information to Lacey and she then chose to put the $2,000 figure on the petition based on her understanding of what the petition called for.

Archibald further asserts that when Lacey testified that she put nothing in the bankruptcy schedules that he did not tell her, Sowerby needed to elicit testimony from her indicating that while the information came from him, she decided how to use that information in filling out the bankruptcy form based on her interpretation of how the form was to be completed. (Doc. No. 13, p. 9).

Given the strong presumption in favor of counsel's conduct, Sowerby's performance did not fall below an objective standard of reasonableness. See Strickland, 466 U.S. at 687-689. Archibald asserts that Sowerby should have more effectively questioned Lacey on direct examination; however, the test is not whether the best criminal defense attorneys might have done more. The test is whether Sowerby's examination of Lacey was within the wide range of reasonable professional assistance, and it was. See Waters, 46 F. 3d at 1518. Further, even assuming arguendo that Sowerby's performance was deficient, Archibald has not shown that there is a reasonable probability that the outcome of the trial would have been different if Sowerby had questioned Lacey as Archibald asserts he should have. See Strickland, 466 U.S. at 687-688.

### G. Sowerby's alleged failure to communicate with Archibald and prepare him for trial was not ineffective assistance of counsel.

Archibald contends that Sowerby did not adequately communicate with him prior to trial, did not review discovery material with him, never discussed trial procedures or strategies with him, informed him of who the adverse witnesses would be only a week before trial, and did not prepare him to testify at trial. (Doc. No. 9, p. 23). Archibald further contends that, as a result of these failures, Sowerby performed an inadequate and ineffectual direct examination of him and was not prepared to present additional

evidence in support of his defense. (Id. at 23-24). Archibald asserts that defense counsel has an obligation to meet with and discuss the defense of the case with his client. (Id. at 24).

Respondent contends that Archibald's assertions are conclusory and there is no other evidence in the record to support the allegations that Sowerby failed to prepare him for trial or review his case with him. Respondent notes that the District Judge commended Sowerby at the close of trial for the excellent job he did defending Archibald. Respondent asserts that the Eleventh Circuit found that there was sufficient evidence to support Archibald's conviction. (Doc. No. 10, p. 32). Respondent further asserts that Archibald told the Court that it was his decision to testify and he never indicated that he did not understand the questions or recognize any of the documents he was given to look at while testifying. (Id. at 33).

Archibald's contentions that Sowerby's alleged failure to adequately communicate with him, prepare him to testify, and perform an adequate direct examination of him constituted ineffective assistance of counsel are without merit. Archibald fails to show that Sowerby's performance was so deficient that it prejudiced his defense or deprived him of a fair trial. See Strickland, 466 U.S. at 687-688. Archibald contends that because of Sowerby's alleged deficiencies, his "testimony on both direct and cross-examination was a disaster." (Doc. No. 9, p. 24). However, Archibald fails to point to a single example of how better communication and preparation by Sowerby could have benefited his defense. Such conclusory allegations unsupported by specifics do not entitle Archibald to habeas relief. See Caderno v. U.S., 256 F. 3d 1213, 1217 (11th 2001).

## H.    Sowerby's closing argument was not deficient.

Archibald contends that Sowerby's rambling and bumbling closing argument was inadequate and ineffectual. Archibald asserts that Sowerby asked the jury for an acquittal based in large part on a theory of defense that was dependent upon an incorrect statement of the law. Archibald further asserts that this theory of defense was contradicted by the Court's jury instructions. (Doc. No. 9, p. 27). Archibald contends that Sowerby admitted to the jury that he was unprepared to counter the government's piercing the corporate veil argument. (Id. at 27-28). Archibald further contends that Sowerby's closing argument fell below the standard of a reasonably competent attorney. Archibald asserts that if Sowerby had argued a full and complete defense to the jury, there is a reasonable probability that the outcome of the trial would have been different. (Id. at 28). Archibald further asserts that, even if the Court's jury instructions cured any errors in Sowerby's closing argument, those errors added to the cumulative effect of his errors. (Doc. No. 13, pp. 10-11).

Respondent contends that the Court's jury instructions eviscerate Archibald's ability to show prejudice from Sowerby's allegedly deficient closing argument. Respondent notes that the Court instructed the jury that they were to make their decision regarding Archibald's guilt only on the basis of testimony and other evidence presented at trial. The Court further instructed the jury that arguments made by lawyers were not evidence. (Doc. No. 10, p. 37).

The right to effective assistance of counsel extends to closing arguments. Yarborough v. Gentry, 540 U.S. 1, 4 (2003). "Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in

his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." Id. It might sometimes even make sense to forgo closing arguments altogether. Id. Judicial review of a defense attorney's closing argument is therefore highly deferential. Id. Judicious selection of arguments for summation is a core exercise of defense counsel's discretion. Id. at 7-8. When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons. Id. at 8.

Archibald's assertion that Sowerby's closing argument was deficient is unavailing. Archibald contends that a lawyer's failure to press points critical to the defense in his closing argument can constitute professionally deficient performance. (Doc. No. 9, p. 28). However, Archibald fails to point to a single critical point that Sowerby failed to pursue in his closing argument. Further, the selection of arguments for summation is a core exercise of defense counsel's discretion. See Yarborough, 540 U.S. at 7-8. Archibald asserts that Sowerby failed to present a coherent and cogent closing argument. (Doc. No. 9, p. 28). The transcript does not reveal that Sowerby's closing argument was incoherent or ineffective. In his closing argument, Sowerby initially contended to the jury that Archibald had three defenses and then proceeded to expound on and explain those defenses to the jury. (Doc. No. 81, pp. 17-36). Given the highly deferential manner in which this Court must review Sowerby's performance, his closing argument did not amount to ineffective assistance of counsel. See Yarborough, 540 U.S. at 4.[5]

---

[5] Compare Mathis v. Zant, 704 F. Supp. 1062, 1064 (N.D. Ga. 1989) (finding ineffective assistance of counsel where closing argument was described by the appellate court as "an apology for having to serve as defendant's counsel").

## I. Archibald was not prejudiced by Sowerby's alleged failure to request a jury charge on the issue of piercing Rooster's corporate veil.

Archibald asserts that Sowerby's second theory of defense was that there was no evidence that Rooster's corporate veil was pierced. Archibald further asserts that Sowerby failed to request that the Court instruct the jury on this theory of defense. (Doc. No. 9, p. 28). Respondent contends that the Court sufficiently charged the jury on the issue of piercing the corporate veil and consequently Archibald is unable to show any prejudice arising from Sowerby's alleged failure. (Doc. No. 10, p. 39). Archibald concedes that he was not prejudiced by this alleged failure, but asserts that Sowerby's alleged failure adds to the cumulative effect of his deficient performance. (Doc. No. 13, p. 11).

The record reveals that the Court properly charged the jury on the issue of piercing the corporate veil. Thus, Archibald is unable to show that he suffered any prejudice as a result of Sowerby's alleged failure to request a jury instruction on that issue. Sowerby's failure to request a jury charge on piercing the corporate veil did not amount to ineffective assistance of counsel. See Strickland, 466 U.S. 668 at 687-688.

## II. Archibald was not prejudiced by the cumulative effect of Sowerby's alleged errors.

Archibald contends that as a result of Sowerby's ineffective assistance, he was deprived of his Fifth Amendment right to due process of law. Archibald further contends that the cumulative effect of all of Sowerby's deficient acts and omissions, as well as the non-reversible errors raised on direct appeal, was so substantial that it undermined his right to a fair and reliable trial. (Doc. No. 9, pp. 29-31).

A defendant is entitled to a fair trial, not a perfect one. <u>U.S. v. Adams</u>, 74 F. 3d 1093, 1100 (11th Cir. 1996). "The 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible." <u>Durham v. McNeil</u>, 2009 WL 1940569, *25 (N.D. Fla. 2009) (<u>citing</u> <u>U.S. v. Ramirez</u>, 426 F. 3d 1344, 1353 (11th Cir. 2005)). The cumulative error principle may be applied to a post-conviction claim of ineffective assistance of counsel. <u>Durham</u>, 2009 WL 1940569 at *25. The cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors. <u>Id.</u> (<u>citing</u> <u>U.S. v. Barshov</u>, 733 F. 2d 842, 852 (11th Cir. 1984)). Thus, the petitioner must show error with respect to at least two of his individual claims. <u>Id.</u>

Archibald does not show that the cumulative effect of Sowerby's alleged errors prejudiced his right to a fair trial. As demonstrated by the Court's treatment of Archibald's individual claims, Sowerby did not commit at least two errors. Archibald is unable to establish that his right to a fair trial was prejudiced due to the cumulative error principle. <u>See</u> <u>Durham</u>, 2009 WL 1940569 at *25.

## III.    Archibald did not receive ineffective assistance of counsel at sentencing.

Archibald asserts that Sowerby rendered ineffective assistance of counsel at sentencing when he failed to adequately interview and call Begner to testify in order to refute the allegation that Archibald obstructed justice. Archibald further asserts that he received a two level sentence increase because he was found to have obstructed justice for allegedly falsely testifying to the Bankruptcy Court that Begner told him to state on his bankruptcy petition that the value of Rooster's was $2,000. Archibald

contends that without Sowerby's ineffective assistance, there is a reasonable probability that his sentence would have been different. (Doc. No. 9, pp. 31-32).

Respondent notes that Sowerby objected to the obstruction of justice enhancement at trial and was overruled by the Court. (Doc. No. 10, pp. 39-40). Respondent asserts that, after Sowerby's objection, the government called Agent Alig, who testified that Archibald told him a series of different stories when confronted with his sworn testimony at the bankruptcy proceeding that Begner instructed him to value Rooster's at $2,000. Agent Alig further testified that Archibald provided a materially false statement to him as a law enforcement officer and that that false statement significantly impeded his investigation. (Id. at 40). Respondent contends that Archibald's obstruction of justice enhancement was based upon the Court's finding that he lied under oath at a bankruptcy proceeding; false testimony at his criminal trial that he received advice from Begner; and false statements to Agent Alig. (Id. at 41-42). Respondent further contends that Archibald's allegations that Begner gave him advice on the valuation of Rooster's is false, as demonstrated by Begner's grand jury and trial testimony stating that he never discussed the valuation of Rooster's with Archibald. (Id. at 42).

Archibald's contention that Sowerby's performance at sentencing was ineffective is without merit. Archibald does not give the Court any legitimate explanation as to how his obstruction of justice sentence enhancement could have been refuted by Sowerby adequately interviewing and then calling Begner as a witness. It is clear from the record that any testimony Begner might have offered at sentencing would not have refuted the obstruction of justice sentence enhancement, as Begner testified on two separate

occasions that he had not given Archibald any advice on how to value Rooster's. Archibald is unable to establish either prong of <u>Strickland</u>. 466 U.S. at 687-688.

## CONCLUSION

Archibald's discovery request for Agent Alig's notes is hereby **DENIED**. It is my **RECOMMENDATION** that Archibald's Motion to Vacate, Set Aside, or Correct his Sentence (Doc. No. 1), filed pursuant to 28 U.S.C. § 2255, be **DENIED**.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 24th day of August, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)